**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

TATIANA ALEXIS-MCLAREN,
*Plaintiff,*
v.

GETMEHEALTHCARE, LLC;
HEALTHCARE FUNDING PARTNERS, LLC
*Defendants.*

**JURY TRIAL DEMANDED**

## Complaint

1. Plaintiff Tatiana Alexis-McLaren ("Plaintiff") brings this action to seek relief and enforce her substantive rights to privacy and seclusion under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, a federal statute enacted in 1991 to remedy the nuisance and invasion of privacy caused by unsolicited and prerecorded telemarketing calls. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. In addition, Plaintiff seeks relief under the Florida Telephone Solicitation Act (FTSA), FSA § 501.059, which similarly imposes various restrictions on telemarketing activities within the state of Florida.

3. In or around March 2025, Ms. McLaren began receiving an onslaught of telemarketing calls, including prerecorded voice calls, to her cellular telephone which were made in order to sell Defendant's insurance services.

4. Plaintiff has made repeated, explicit requests to both Defendants and their agents to stop calling her, but the calls have continued to this day.

5. In addition, Plaintiff registered her number on the national do-not-call registry but that too did not stop the calls.

6. Plaintiff has been subjected to a relentless bombardment of calls promoting Defendants' insurance services, estimated to be in excess of 1,000 calls, and the calls continue to this day.

7. Plaintiff seeks relief in this action because nothing she has tried has convinced Defendants to stop harassing her with unsolicited and unwanted telemarketing calls.

## Parties

8. Plaintiff is an individual that resides in the state of New York.

9. Defendant Getmehealthcare, LLC is a Florida limited liability company, with its principal place of business in Cooper City, FL.

10. Defendant Healthcare Funding Partners, LLC is a Florida limited liability company, with its principal place of business in Boca Raton, FL.

11. Defendant Healthcare Funding Partners acquired Defendant Getmehealthcare in May, 2025.

12. Since the acquisition, Defendants are commonly owned and operated by Michael Hilf and Chad Sokoloff.

13. Defendants jointly engaged in the conduct described herein for a common purpose.

**Jurisdiction & Venue**

14. The Court has federal question subject matter jurisdiction over these TCPA claims. Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740 (2012).

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this district.

**Legal Background**

16. Both the TCPA and FTSA prohibit the use of a prerecorded voice in unsolicited telemarketing calls. 47 U.S.C. § 227(b)(1); Fla. Stat. § 501.059(8)(a).

17. In addition, both the FTSA and FCC regulations promulgated under the TCPA require telemarketers to honor do-not-call requests made by the recipients of their calls. 47 U.S.C.§ 227(c); 47 C.F.R. 64.1200(c)-(e); Fla. Stat. § 501.059(5)(a).

18. FCC regulations promulgated under the TCPA also require telemarketers to refrain from calling numbers registered on the national do-not-call registry. 47 U.S.C.§ 227(c); 47 C.F.R. 64.1200(c)

19. Both the TCPA and FTSA provide a private cause of action to vindicate the privacy rights of persons who receive calls made in violation of these provisions. 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5), Fla. Stat. § 501.059(10).

**Factual Allegations**

20. Defendants sell health insurance policies over the phone.

21. Defendants engaged vendors to generate leads for their business, including through the placement of outbound telephone calls to individual consumers, which are transferred to Defendants if the consumer appears to be interested in obtaining health insurance.

22. Defendants gave its vendors authority to place these calls.

23. Defendants pays its vendors for each such call that is transferred to Defendant.

24. Defendants know that its vendors are placing illegal phone calls that do not comply with the provisions of the TCPA and FTSA, yet they continue to authorize the calls and continues pay its vendors for the calls they transfer.

25. At all times relevant hereto, Plaintiff's telephone number (708) 400-XXX, was assigned to cellular telephone service.

26. At all times relevant hereto, Plaintiff used the number for personal, non-commercial purposes, including inside of her home.

27. In or around February 2025, Plaintiff began receiving telemarketing calls from Defendants' vendors, which attempted to sell Defendants' insurance services.

28. Many of the calls began with a robotic sounding, prerecorded voice that promoted Medicare benefits.

29. During several of these calls, Plaintiff stayed on the line long enough to tell Defendants' vendor to stop calling her, but the calls continued.

30. In or around April 2025, Plaintiff received another telemarketing call from Defendants' vendor, which attempted to sell Defendants' insurance services.

31. During this call, Defendants' vendor transferred the call to Defendants.

32. During this call, Plaintiff spoke to Defendants' representative directly, instructed Defendants to stop calling her but the calls did not stop.

33. During this time period, Plaintiff attempted to block the calls, but the effort was unsuccessful because Defendants' vendors populated Plaintiff's caller ID with a different, fake phone number every time they called, preventing Plaintiff from blocking the calls.

34. In or around June 2025, Plaintiff purchased a calling blocking application that was supposed to block all calls from a given area code, but that effort was also unsuccessful because the application did not work as advertised and still allowed Defendant's calls to come through.

35. In or around November 2025, Plaintiff began to document some of the calls. Some of the calls are described below.

36. On November 13, 2025 at 5:11pm, Defendants' vendor called Plaintiff to promote Defendants' insurance services and a robotic sounding, prerecorded voice began the call as follows:

> "Good evening, this is Amalie from American Benefits. We're reaching out to seniors to ensure any unclaimed additional Medicare benefits are fully processed for the 2026 annual enrollment . . ."

37. Plaintiff hung up.

38. American Benefits is one of many fake names that Defendants' agents use to hide their identity.

39. On November 14, 2025 at 1:20pm, Plaintiff received another call promoting from Defendants' insurance products.

40. During this call, Plaintiff was transferred to Defendants.

41. Upon transfer, Defendants' representative, Ryan, confirmed that he worked for Getmehealthcare. The call was disconnected before Plaintiff could make another do-not-call request.

42. Later that day, at approximately 2:44pm, Plaintiff received a call from Defendant's vendor, who asked how the call get disconnected after transfer.

43. The vendor knew that the call had been disconnected after transfer, confirming that Defendant and its vendor were communicating information about the call.

44. During this call, Defendant's vendor confirmed he was calling for Defendant Healthcare Funding Partners.

45. During this call, Plaintiff advised that she did not want any more calls and asked if the agent would please put her on the do not call list.

46. During this call, Plaintiff stated the she had already asked for the calls to stop months ago.

47. On or around November 14, 2025 at 3:12pm, Plaintiff received another call from Defendants' vendor and a robotic sounding, prerecorded voice began the call as follows:

> "Hello. Good morning, Jade here. We're reaching out to members who still have unclaimed reimbursements showing from their 2025 Medicare coverage. We're just confirming eligibility for 2026 so you don't miss any of those benefits."

48. Plaintiff hung up.

49. On November 14, 2025, Defendants' agents placed two more calls to Plaintiff and during each of these calls Plaintiff made a do not call request.

50. On November 15, 2025, Defendants' agents placed four calls to Plaintiff and during each of these calls Plaintiff made a do not call request.

51. On November 15, 2025, Plaintiff registered her number on the national do-not call registry, but the calls continued.

52. On November 17, 2025 at 4:33pm, Plaintiff placed a call to Defendant Getmehealthcare and Defendants' representative, Tom, answered the call and confirmed that he worked for Getmehealthcare.

53. During this call, Plaintiff explained that she was called the previous week and transferred to Defendant and she wanted to know if it was really Getmehealthcare that she had been transferred to or if the calls she had received were an unrelated scam.

54. During this call, Defendants' representative confirmed that the calls were legitimate. He explained that the calls she was receiving were coming from Defendants' "transfer representatives" and that Defendants do not pay the transfer representatives unless the call is successfully transferred.

55. Defendant's representative explained further that because the transfer representatives only wanted to transfer the call, they would often lie and violate the law, but confirmed that they do in fact transfer the calls to Defendants.

56. Plaintiff asked why Defendants would work with the transfer agents in the first place given this conduct and Defendants' representative Tom replied that the reason is because it was cheap to get them to call.

57. During this call, Plaintiff explained that she had received over 1,000 calls from Defendants' agents and did not want any more calls.

58. The calls did not stop. Defendants' agents continued to call, including a call on November 21, 2025 at 1:01pm, which once again began with a robotic sounding, prerecorded voice that promoted Medicare benefits.

59. On November 21, 2025 at 5:04pm, Plaintiff once again placed a call to Defendant Getmehealthcare and Defendants' representative, Dominick, answered the call and confirmed that he worked for Getmehealthcare.

60. During this call, Plaintiff explained that she had repeatedly asked Defendants to stop calling and nothing was working.

61. During this call, Defendants' representative Dominick explained that he heard this all the time but it was a difficult situation because Defendants' agent claimed that Defendants engaged over 200 agencies that were trying to call.

62. During this call, Dominick confirmed that Defendants had the ability to tell their agents to stop calling and Plaintiff begged him to do so.

63. Dominick promised he would tell Defendant's agents to stop calling Plaintiff.

64. But the calls did not stop and Defendants' agents continued to call Plaintiff, including on twice on November 25, 2026 and again on November 26, 2025.

65. The calls continue to this day.

66. The calls Plaintiff received were made on Defendant's behalf for the purposes of selling Defendants' insurance products.

67. Defendants willfully and knowingly engaged transfer agents to place these calls and paid for the transfers despite knowing that the calls were illegal.

68. Defendants fully authorized the transfer agents to place the calls to Plaintiff.

69. Defendants had the ability to instruct its transfer agents to stop the calls, but failed to do so despite Plaintiff's repeated requests.

70. Defendants are vicariously liable for the calls that its agents made to Plaintiff on their behalf.

71. Plaintiff never consented to receive these calls and did everything she could think to do to get the calls to stop.

72. Defendants' egregious conduct has injured Plaintiff by invading her substantive right to privacy, intruding upon her seclusion and right to be left alone, wasting her time, causing her emotional distress, and causing Plaintiff to spend money on a call blocking application that ultimately did not even work to stop the calls.

## Legal Claims

### Count One
### Violation of the TCPA's Prerecorded Call Provisions

73. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

74. Defendants violated 47 U.S.C. § 227(b)(1)(A) by making, through their agents, prerecorded calls to Plaintiff's cellular telephone number.

75. Defendants' violations were willful and knowing especially after the repeated stop requests.

Count Two
Violations of the TCPA's Do Not Call Registry Provisions

76. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

77. Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating, through their agents, multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry.

78. Defendants' violations were negligent and/or willful.

Count Three
Violation of the TCPA's Internal Do-Not-Call List Provisions

79. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

80. Defendants violated 47 U.S.C. § 227(c) and the FCC's regulation at 47 C.F.R. § 64.1200(d)(3) by failing to institute procedures necessary to honor do-not-call requests and by placing, through their agents, telemarketing calls to Plaintiff's phone number after receipt of a do-not-call request.

81. Defendants' violations were willful and knowing.

Count Four
Violation of the FTSA's Prerecorded Call Provisions

82. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

83. Defendants violated Fla. Stat. § 501.059(8)(a) by making, through their agents, or knowingly allowing their agents to make, unsolicited calls to Plaintiff's phone number that played prerecorded messages.

84. Defendants' violations were willful and knowing.

Count Five
Violation of the FTSA's Internal Do-Not Call List Provisions

85. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

86. Defendants violated Fla. Stat. § 501.059(5)(a) by initiating, through their agents, outbound calls to Plaintiff after she requested the calls to stop.

87. Defendants' violations were willful and knowing.

Count Six
Invasion of Privacy by Intrusion Upon Seclusion

88. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

89. Plaintiff has a reasonable expectation of privacy and seclusion in the use of her telephone, in her home, and in her daily life.

90. Defendants' conduct of placing over 1,000 unwanted calls to Plaintiff's telephone number despite repeated requests to stop constitutes and oppressive and intentional intrusion into Plaintiff's privacy and seclusion.

91. This intrusive would be highly offensive to a reasonable person.

92. This intrusion violated Plaintiff's substantive civil right to privacy.

## Relief Sought

Plaintiff requests the following relief:

A. A declaration that Defendants violated the TCPA, FTSA, and invaded Plaintiff's civil right to privacy;

B. An order enjoining Defendants from utilizing transfer agents to sell its products;

C. Statutory Damages under the TCPA and FTSA as required by law and as appropriate for Defendants' conduct, which was willful and knowing.

D. Actual Damages on the Invasion of Privacy Count

E. Attorneys' Fees and Costs pursuant to the FTSA.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully Submitted,

/s/ Keith J. Keogh
Keith J. Keogh, Esq.
Timothy J. Sostrin (PHV Forthcoming)
Keogh Law, LTD
55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Telephone: 312-726-1092

Facsimile: 312-726-1093
keith@KeoghLaw.com
tsostrin@keoghlaw.com